## Case No. 4,211.

DUTTON v. NEW YORK LIFE INS. CO.

[7 Ins. Law J. 129, 675; 6 Reporter, 423.][1]

Circuit Court, D. Indiana. Nov. Term, 1877.

Finch & Finch, for plaintiff.
McDonald & Butler, for defendant.

GRESHAM, District Judge (charging jury). It is not disputed that some of the premiums were not paid on or before the day when by the terms of the policy they were due. This forfeited the policy, and unless the company

[1] [6 Reporter, 423, contains only a partial report.]

or its authorized agent or agents waived this forfeiture the plaintiff cannot recover. Mr. Joseph collected all the premiums that were paid, and it is not disputed that the company received the two first premiums. If Joseph collected the premiums, and paid them over to the company, it is quite immaterial what authority he had to represent the company. If the company got the premiums either at or before their maturity, it is of no consequence who collected the money from the assured.

Curran McDonald testified that he knew Joseph sent money or drafts to New York in connection with his agency here. That at times Joseph gave him money to go to the bank and buy drafts to send to New York. That these drafts were sent to an insurance company whose name had "New York" in it; and that, so far as he knew, Joseph represented but one company. On the other hand the treasurer of the company swears in his deposition that, after the second semi-annual premium, Joseph sent no money to the home office; so it is a question of fact whether the premiums were paid. If Joseph was authorized by the company to go and demand premiums from George Dutton, either before or after forfeiture, his failure to account to the company for the premiums collected is no defense to this action. If the company had a dishonest agent, it is its misfortune and not the misfortune of the assured. And if Joseph delivered this policy to the assured and collected the first and second premiums —and that is not denied;—if he subsequently called both before and after forfeiture and demanded and received premiums; if he was engaged here from 1861 or 1862 to 1872 or 1873, representing the defendant, doing what a local agent usually does, soliciting insurance, collecting premiums, adjusting and paying losses, corresponding with the home office, and remitting money, if he was known to be thus acting in the community where the assured lived, I leave it to you to say whether or not the company in New York, or those in charge of the general office here, did not know the extent to which Joseph was claiming to represent the defendant; and if the defendant did know that Joseph was thus claiming to act for it during all this time, it must be held by his acts. And if you find that for this length of time, and in this manner, Joseph did hold himself out as the agent of the company, and that with the knowledge of the company, or its agent in charge of its office at this place, and that the assured in good faith paid the premiums to Joseph, believing him to have authority to demand and receive the same, then the defendant cannot be heard to say that Joseph had no authority to collect the money and waive forfeiture, and, if the last premium was paid at or before maturity, you are authorized to infer that all former premiums have been paid in time, or after maturity on waiver of forfeiture. Insurance companies are not in the habit of collecting premiums on forfeited or dead policies.

It is insisted by the defendant that by the terms of the policy the only evidence of payment of premiums is receipts signed by the president or actuary. There is a provision of that kind in the policy; but notwithstanding that provision, if the company got the premiums the policy was kept alive. Receipts are not the only evidence of payment. The material question is, were the premiums paid? If they were, it is immaterial whether receipts were given or not.

Mrs. Dutton said that some time after the death of her husband she went to the company's office here in Indianapolis, informed them of her husband's death, and demanded payment of the policy. This was in the forenoon. She was requested to return at 2 o'clock in the afternoon; she did so, when she was informed that Joseph had been at the office and left. She was then requested to return at 9 o'clock the next morning. She did so at that time, and was informed that Joseph had left the city, and that the company would not pay the policy, because the assured had no right to pay the premiums to Joseph. It was not claimed that Joseph had not collected the premiums. The refusal to pay was put upon other grounds, and this was a waiver of the formal proofs of death of the assured. And if you find for the plaintiff you are at liberty to allow her interest at the rate of six per cent., say from sixty days after the time she went to the office and demanded payment of the policy.

There is one thing further that I might have said as to the authority of this agent. I understand that it is admitted that Joseph had some authority to appear for this company. The only serious controversy is as to the authority of Joseph to waive forfeitures. The company say that by the terms of this contract the assured was informed that the agent could not do anything of that kind. Now any term of the contract inserted for the benefit of the company may be waived, and it is a question of fact for you to determine whether they were waived. The extent of an agent's authority is to be determined by all the facts before the jury. You have heard all the witnesses, and if Joseph for some eight or ten years discharged the general duties of a local agent, soliciting business, collecting premiums, adjusting and paying losses, and remitting money to the home office, it is for you to say whether in thus acting he exceeded his authority, whether the company did not know the extent to which Joseph was claiming authority to represent it.

(The jury having asked particularly as to one point, the court further instructed:)

This is what I endeavored to say on that point, and think I did say it: If you believe from the evidence the last premium was paid at or before maturity to the company, or to some one authorized to represent the com-

pany, as already explained to you, then you are authorized to infer that all prior premiums were paid, either in time or by waiver after forfeiture. The agent would hardly have called on the assured for this premium if the policy had already lapsed. It will not do to allow an insurance company to say, after its agent has demanded and received a premium, that the policy was dead, and therefore the payment amounted to nothing. Notwithstanding what was said in that receipt, viz., that a receipt to bind the company should be signed by the president or actuary, if in fact the company itself or those in charge of the company's office here sent Joseph out to transact business with this man in this way, and he paid money to Joseph while Joseph was acting in this general way, as the local agent of this company—I say if he thus received the money the company is bound by it. In other words, the form of the receipt is not material. The question is whether the company or its authorized agent got the money. If this man paid the money either to the company or its authorized agent, it is the duty of the company to pay the loss, and you should not hesitate about the particular form of the receipt. As I undertook to say to the jury before, the question here is: First, was Joseph authorized to go there and do business in this way? If he was, notwithstanding the form of these receipts, the company is bound by his receipt of the premiums. Again, suppose the company had limited Joseph's authority in this way, yet if for this period of eight or ten years Joseph continued to sustain apparently the relation of a general or local agent of the company here, transacting the duties of an insurance agent, soliciting risks, making contracts of insurance, delivering policies, collecting premiums, forwarding them to the company, and adjusting and paying losses, if he was doing that and was recognized by the company's general office here, they knowing what he was doing all the time, and Dutton paid his premiums in good faith, believing Joseph was sent by the company to collect them, then the company is liable, whether it authorized Joseph to demand payment or not. If the company knew what Joseph was doing, and took no steps to stop him, you have a right to infer that he had the company's authority for what he did.

The jury returned a verdict for the plaintiff in the sum of $64.88.